Case is Jane Doe-3 v. McLean County Unit District No. 5. For the appellant, Ms. Bullock, and for the appellee, Mr. Brant, Mr. Lowenstein, and Mr. Kearns, have you all divided your time? Yes, we have. All right. You may proceed. Good morning. May it please the Court, my name is Ellen Bullock, and I represent plaintiffs' appellants Jane Doe-2 and Jane Doe-3 in this matter. This appeal involves common law breaches of duty of a willful and wanton variety, as recognized by the Illinois Supreme Court in the Jane Doe-3 case, and it also involves statutory claims for willful violation of the Abused and Neglected Child Reporting Act, or ANCRA. Both are pled in the Fourth Amended Complaint arising out of the same facts of passing a known pedophile teacher to another school district, while concealing and misrepresenting his known prior teacher-on-student sexual harassment. The facts of this case are already known to the Court from its review of the briefs, and also from Jane Doe-3's prior appeal to this Court in this matter. I want to focus on ANCRA and its application to the facts of this case. Counsel, I agree. I'm glad you want to start there. And my question is, in light of the Supreme Court's decision, why are we talking about that? About ANCRA? Yes. Well, it was waived at the Supreme Court, or was considered waived at the Supreme Court. Right. The dissent of Justice Carmeier said, why aren't we talking about ANCRA? And I believe it should be talked about. I tried to raise it in the Supreme Court and it was found waived. But I think there is a good-faith extension of the law here. This is the case that extends ANCRA, as it should be extended to imply a private cause of action. Your position is that, although they said it was waived, that would not preclude you from... Well, for several reasons. One is, it's against different defendants. These defendants that are being sued for violations of ANCRA have not been sued for violations of ANCRA before. And another reason is that, as the Supreme Court said it waived it for those defendants, it just didn't choose to address it. And again, I asked that it would address it. But for the new defendants, such as Julie Basting, the Teachers Union representative, she has certainly never been sued for violations of ANCRA before, ever, at any time, by Jane Doe 2 or Jane Doe 3. And such are many of the other defendants. I use her as an example. I think that ANCRA implies a private cause of action. I think it clearly does. It's hard to understand exactly when a statute implies a private cause of action. And there are certainly some courts that have held that ANCRA does not so imply. But I think it does. This court has never held that ANCRA does not imply a private cause of action. And again, the Supreme Court has never held that. But I do want to begin there, because I think that the Reporting Act, which I've worked with for years now, and I've become more familiar with the Reporting Act during my work on these many cases, but I think the Reporting Act is exactly where I should begin and this court should begin. Mandated reporting is mandated. That makes it mandatory. It's immediate. It must be immediate. The reporters are clearly defined, including all school personnel, and they are mandated to report suspected abuse, risk of abuse, and known abuse. If you take the immediacy and the risk of abuse, that brings us to the injuries that we're facing here today. The risk of abuse and immediacy show that ANCRA is indeed concerned with exactly who the Jane Doe's are, which is girls at the future school, the next school down the line. They are definitely the future school victims. That's who Jane Doe 2 and 3, who I represent, are. But the risk of abuse and immediacy show that ANCRA is indeed concerned with exactly who the Jane Doe's are, which is girls at the future school, the next school down the line. They are included in that language of ANCRA in the immediacy of the reporting and the risk of future abuse that must be reported. They belong to the class, the protected class, that Jane Doe's do. Definitely they belong to the protected class. They are abused children, children who have been abused in a public school setting when there was knowledge of the abuse prior to their abuse. So they belong to that protected class in every possible way that a child can belong to a class of persons that are protected as these children are in this statute, under this statute. Well, I want to look today at some ways in which these facts play into this case. Well, before you do, I mean, you talked about the class that they belong to, and that would be one of the factors that the Fisher Court identified to be considered in determining whether or not there is an applied right of action. But there are three others. The one that I'd like to ask you about, though, is whether or not implying a private right of action is necessary to provide an adequate remedy for violations of the statute. Because here it seems that the statute clearly provides a criminal penalty for the failure to follow the requirements of ANCRA. How is it that implying a private right of action is necessary when you have that criminal penalty contained within the statute? Yes, your Honor, I agree. It does include the misdemeanor penalty. None of these defendants have ever been prosecuted under ANCRA, and not many are, actually. But here's where I think we get to the heart of the civil versus criminal, because there is a civil versus criminal common law point to be made about implying a private cause of action. There is, in the third prong of the statute, which I also haven't reached yet, whether implying a private cause of action goes with the underlying purposes of the Act. And I think the third and fourth go together here. The underlying purposes of this Act are so clear, and they're the same purposes, public protection of children, children in schools, protection of their education, safety in their education. Those are so clearly held in the Jane Doe 3 case, but in all the courts' cases in Illinois for hundreds of years. The protection of children is paramount. The protection of children policies that support ANCRA, I think, can only be protected by a civil cause of action. And let me just briefly lay out why. When these girls faced, when the little girls faced the perpetrator, John White, there were three different powers allayed against them. There was the power of the male schoolteacher, who was big and strong, of course, and was physically more powerful. They were mentally more powerful, too, because they were six. And then there was the power of his position, he was their teacher in their classroom. And then there was the power of his employer, the school district. And their motivations, the school district's motivations, were to get him out of their school district to protect their children and their institution. But they really were not protective of the girls down the way. And then the third power allayed out against these girls was the teacher's union, which had the power of representing the professional status of the teacher. So they also wanted to protect John White from adverse consequences to his profession. So the combination of those three, the only workable solution was the solution I believe that's often reached, which was to send him outside to another school district. There, his position is protected, he's professionally protected, and yet the school district's institution is protected because they don't have to face the public flak with him. The outraged parents, the bad press, the types of things that would follow if he was known to the public to be a harasser in their school district. These three powers are kind of the perfect storm, and the girls in the next school are the true victims. So I do believe that implying a civil cause of action is a cautious and careful thing to do in this instance. For years when the civil cause of action has come up in these cases, I don't think it's ever come up in this type of case with those three very powerful forces arrayed against the victims who are protected in this state, and their safety and their innocence in their education is protectable and protected. So I think that is why this is a unique case for implying a civil cause of action. You know, when the school district and the teachers' union crafted or constructed this way to get John White out of their backyard, out of their problem range, they solved a problem for themselves, but they did not solve a problem for the girls in the next district over. There was, there's a lot of facts in this case that have been, I think, looked at through a, like, I'm just going to look at this fact right now and not this one. But actually the John White abuse of these children was a long and unbroken prior knowledge of prior events. In March of 2004, the spring of 2004, parents of three girls, get it, think of that number in a classroom. Children, not one, not two, but three little girls, their parents came to the school district in March of 2004 and complained not about pornography, there's this kind of red herring about what's pornography, what's touching. These three parents came and complained about touching, unwanted touching, uncomfortable touching that was sexual. So they complained about this to the principal and the assistant principal in March of 2004. Then there's a summer vacation we all know of, about three months, and then he went back to school in October 2004. In October 2004, he's investigated for watching pornography on his classroom computer, which I personally think is a horrible thing and he should be fired right away. But whatever, whether or not, I think that doesn't matter, because this was only a few months after the three parents of the girls had talked about the touching. So that was all known at that time. And the school district held a meeting to talk to John White about his pornography. And at that meeting, there was his teacher's union representative, Julie Basting, and then there was Carla Jurgensen from the Illinois Education Association, which seems a little bit much to put somebody from Springfield, a nice town, into the McLean School District at that point. Then they took him out for 10 days. And while he was out for 10 days in October 2004, he had a letter that was copied to all those same people that said you're out for 10 days for using your computer to watch inappropriate sites. And then while he was out for 10 days, his principal, Ed Heineman, sent him an email that said, you know, continue to move forward. You have my full support. If I can help in any way, please don't hesitate. Everything is held in strict confidence. This is nobody's business. I think that's an anti-ANCRA statement right there. Why is it nobody's business? It's DCFS's business. If they were so afraid of misdemeanor penalties, they would recognize at that point, I think it's somebody's business. I think it's a parent's business. But I think it's also DCFS's business, as ANCRA will tell you. So he was returned to the classroom with secrecy in place that his principal had given him. And then he immediately began both types of offensive behavior, the visualization and also the touching. And there's this situation, I don't think it's White's worst crime, I think his crimes towards my plaintiffs are his worst crimes, but it's one of his oddest. He follows a little girl around the school who's the sister of one of his students, showing her sexually suggestive photographs of actresses and telling her she looks like this actress. Now, I don't think they were totally nude, I think they were kind of like scantily clothed, but the mother went ballistic. And she complained and said she was going to call in the police. When she said this, Pye and Heinemann then said, let's put him out again, and they put him on a 35-day leave of absence. During that 35 days, and the teacher's union was again involved because they're his representative, but they don't have attorney-client privilege. So when they were, when he was on this 35-day leave, first there's a letter ending his employment on April 14th, signed by two school district board members that are not being sued today. And then second, 14 days later, he is given a voluntary severance agreement. Just that chronology raises questions, because you can't terminate somebody if they're not being sued. If he's done, he's done. It doesn't need to be given special severance. Counsel, let me ask you this. I mean, you know, what you're outlining, and that's all in the briefs and what's been presented to us, if it is accurate, it's horrible. It's horrible. No one, no reasonable person would stand in defense of it. But I think, you know, quite frankly, the hardest obstacle you face is whether or not there's an adequate remedy for violation of the statute. Is your position that because they weren't prosecuted, it's inadequate? Or it's inadequate as it exists, even had they been prosecuted? Well, both. And it's a good question. But my position is it's inadequate because they weren't prosecuted. My position is it's inadequate because they aren't going to be prosecuted. Because of this array of powers and this kind of official will-pass-the-trash, I don't think that ANCRA can be criminally enforced or counted on to be criminally enforced. I think that these entities wanted to pass. I think passing is a somewhat common, all too common solution to a problem. And I think that's why it's inadequate. Because the persons who are mandated reporters are following these elaborate rules to do this other act, which is pass-the-trash type thing, instead of doing mandated reporting. I think that the mandated reporting has to have teeth. And I think maybe the public or myself and all of us thought that it would have more teeth with the criminal. I think it's rather gotten more and more leaning towards these private passing solutions over time, over the past decade. And fewer and fewer hopes that it will be enforced through criminal mechanisms. Which would be, I think, a good thing. But it is not happening. And I don't think that we have to wait around at the expense of our children, schoolchildren. I just don't think that's required. I think these are official strategies to pass these teachers. And I think that the law of Illinois, through the Jane Doe case that went back, through the Huddleston case, through the Green case from this court, is that schoolchildren can be protected. Their needs for safety in the classroom can be protected. The statute itself expresses that, mandated reporting. And I don't think there's anything incongruous with putting a civil cause of action for that important public policy purpose. Which, as it says, supports the underlying purposes of this Act. I don't want to lead you too far afield here, but if we do not find an implied private right of action through ANCRA here, will evidence of ANCRA, its provisions, be relevant to any issue in this case? Take the breach of duty aspect of it. Is ANCRA even going to be mentioned in this case? I think so. Always it's been pled from the beginning. I've pled it as the violations of ANCRA were willful and wanton breaches of duty in themselves under the common law. So I think that at least, I would say, I plan to use that in the trial that would remain. But I think that the mandated reporting statute is a really important statute. I think it's been flagrantly ignored in this passing situation. And I think that's a problem in and of itself. These are school district employees. They're high-level school district employees. They certainly know they're supposed to follow ANCRA. So it's a problem that they're not. And that they're not with impunity. And that's where this case is at. And I think it's a problem in and of itself. Pye wrote to Baystein when White was arrested in Urbana for My Little Girls' abuse. Pye wrote to Baystein, please keep this information confidential. Again, confidentiality is anti-ANCRA. But I thought you would be interested in hearing that John White was arrested in Urbana today. I don't know the specific charges, but it appears to be much worse than the issues he faced here. I'm glad we took the steps we did to get him out of the district. I believe it was you who said he was on a path to further problems. Let me make brief mention, my time is almost up, of this path to further problems. Pedophilia, unlike some other very serious criminal acts, is serial. It's predatory and it's serial. There were two victims of White in McLean for acts he committed, felony acts he committed prior to the passing. And there were eight victims in Urbana for felony acts he committed after the passing. This is a serial pedophile. And the trial court agreed with plaintiffs, it was one of the rare agreements, that pedophilia is serial. Absolutely it is. So again, that and our child protection policies of Illinois and the recognition in the Huddleston case of the Supreme Court that pedophilia is serial in nature, we have to put some teeth in ANCRA. And we have to make sure that the different players who are working together here, all of them powerful, are not allowed to do this kind of little fancy trick where you move to the next district. Not our problem anymore. We got rid of him. We're the teachers union, we're the school district administration, we like to work together, we're being really cooperative, and we got rid of that bad guy. But she didn't, because he's a serial predator and he's next door. Thank you very much. Thank you, you'll have additional time on rebuttal. Good morning, I'm Jim Kearns, I'm here on behalf of the school district and most of the other athletes. Two things I want to say, so I don't forget them, in rebuttal. The first has to do with the prosecution or the lack of prosecution of the defendants by the McLean County State's Attorney. I want to point out that the Champaign County State's Attorney prosecuted the Urbana defendants. I also want to point out that while all of us here are required by the rules to accept as true everything in that complaint, the State's Attorney in McLean County is not so required. He's required to know that he has a cause of action before he goes forward, and I think that's important not to forget that point. The second thing is whether the remedy is inadequate or not is an important consideration, but the idea that because he was not a defendant, he was a defendant, we have State's Attorney's offices in 102 counties in Illinois who spend their lives prosecuting people who ignore the statutes. That doesn't mean that the punishments aren't appropriate. That doesn't mean that the appellate court is to say, well, he did it and there was a law against it and the punishment didn't stop him from doing it, so I guess we're just going to have to judicially raise the punishment. That's nonsense. The statute sets out the thing, and while we're on the subject, let me just point out that in 2004, for the first of about seven or eight decisions interpreting Illinois law, the court determined that there was no private cause of action. Since 2004, the legislature has amended this statute at least ten times. It couldn't be more clear that the judicial interpretation given to the statute by the judiciary has been ratified by the legislature. Every time they have had the opportunity to change the rules, they have declined to do so. This is in derogation of the common law to create a private cause of action here for failure to protect a third party. Anytime you're in derogation of the common law, you ought to say so. There's not one word about a private cause of action in that statute. There never has been, and that's why it should not be considered. Now I want to go back and point out a couple of things. We're here for the second time with respect to four of the defendants, and there are 12 new defendants since the last time this case was on appeal. The four old defendants were also on a fourth amended complaint. Doe 3 established two clear rules which ought to be governing this case. First is the rule that's as old as the common law, and that is there is no duty on the part of someone to protect another from the acts of a third party absent a special relationship. They couldn't spell that out more clearly. And they also spelled out clearly that the people at Unit 5 did not have a special relationship with the plaintiffs. No duty. The duty they found was when personnel at Unit 5, the defendants in the previous case, communicated with Urbana and told them something which wasn't true willfully and wantonly. Now that was what was in the second amended complaint you had before. What do we have here? The four defendants who were the original defendants, the plaintiffs amended the complaint and withdrew the assertion that they had communicated with Urbana. The other 12, she's never asserted. These 16 defendants that are here on this appeal are not alleged to have had one thing to do with Urbana. The only thing that the Supreme Court found. The amended complaint did not attempt to set up some sort of special relationship. They left that alone. Of the 16 defendants, four of them are alleged to have known that there were complaints about John White at Unit 5. Not the complaints for which he went to jail. Not the two felonies that she talked about in Unit 5. Those were not known about until John White got arrested. Other complaints however. Four of them knew it. Twelve of them didn't. They're not even alleged to have known it. They're alleged to have known that he looked at adult pornography on a computer. Not a violation of the law even. Maybe it's a firing offense, maybe not. But it was a violation of the rules of Unit 5. That's what 12 of them knew and they're accused of passing him like a hot potato. It's just ridiculous. Now really it ought to be enough to say they had no communications with Urbana. They had no special relationship. They had no duty. And that's all there ought to be to it. That's all there is to it. Counts 5, 6, 7 and 8 should be dismissed out of hand for that very reason. Now with respect to the case, the law of the case is there's no cause of action for ANCRA. And the initial hearing on the Second Amendment complaint, Judge Jones struck a count directed as a violation of ANCRA and said there is no cause of action for ANCRA. It was actually conceded in oral argument that that was correct. When the case came up here the first time, they didn't even argue that. They didn't even raise that issue. When it went to the Supreme Court they tried to raise it and the Supreme Court said too late. So it goes back down to the trial court as the law of the case. The judge ruled on it. It went to the appellate court. They didn't perfect their appeal of that issue. They didn't ask the court to address it. It's the law of the case. It's not the law of the case against those four guys. It's the law of the case. The plaintiffs have been, are barred from arguing that ANCRA applies to this matter. Adding new defendants is not some way around the rules. So it's pretty, obviously if the law of the case means anything, it means that they have no right to raise that issue. Now with respect to, I've already touched on this a little bit, but with respect, even if they did, they haven't got a cause of action. There are, as I said, at least seven cases interpreting Illinois law to say this statute does not provide civil remedy and there have been ten amendments to the thing since then which have not done anything. It's worth noting that the legislature did amend sanctions for failing to violate it, for willfully failing to violate it. You can suspend someone's license to teach immediately. But when they added that sanction, they didn't add anything about civil remedies and they didn't provide anything in the first place. There's just no reason to do so. And whether, if you look at the language of the statute, you'll see that the statute is talking about the abused children. There's nothing in that statute to imply that the law intended to provide for any future victim. It's the victim and the persons that are right there in a similar situation. These people didn't even exist as far as a potential victim concerned. Now, I'd be silly if I said that it's not foreseeable that if he doesn't get stopped, he'll continue to do something. You can't argue that one. It's obviously true. But the question here before you is what did the legislature do when they created ANCRA? Did the legislature create a private cause of action or not? The plaintiff's argument seems to be that you're the super legislature. You can add teeth to this legislation that weren't put there by the legislature. That's not true. Is there any legislative history that would support implying a private right of action? I'm aware of none. That's all I can tell you. There's no legislative history that I'm aware of on either side of that issue. But the standard rules of interpreting what the legislature does after a person has been detained when they did it in the first place, any reasonable interpretation of that statute is there's no private cause of action. Now, we've also mentioned the Tort Immunity Act. I think it's 1-107 and 2-210. One has to do with the school district and one has to do with the individuals. And those, in 1986, were amended to expand the tort immunities of school districts, among others, a municipal organization, to limit the liability. And they inserted a statement that there's no liability for provision of information. Now, as I said, I don't think the complaint even attempts to suggest that these individuals provided any information whatsoever to Unit 5 or to Urbana. But if they did, it would be barred by that act anyway. I've really got nothing further to thank you, Your Honor. Mr. Lowenstein. Thank you. My name is Ralph Lowenstein, and I'm here on behalf of three of the defendants, Julia Bastien, Carla Jurgensen, and the Illinois Education Association. There are many similarities between our case and the other defendants' case, as well as the defense's. Carla Jurgensen and Julia Bastien are accused of violation of ANCRA, and the Illinois Education Association is sued based upon a theory of respondeat superior for the alleged passing by Jurgensen. But there are a number of factual and legal distinctions, as well, that I want to concentrate on in my short minutes. Julia Bastien is a teacher who's employed by the local association president. She's never been an administrator. She had no supervisory responsibility with regard to Mr. White or any other employee of the school district. She had no authority by virtue of the school code or the collective bargaining agreement to hire, retain, discharge, remove from a classroom, put a teacher in a personnel file, remove information from a personnel file, or make any kind of employment decisions with regard to Mr. White or any other employee. All of these rights are ones reserved to the Board of Education and to the administrators. She is not alleged to have produced or transmitted the employment verification form. She's not alleged, nor did she have any communication whatsoever with the Urbana school district or with either of the plaintiffs in this case. And Counselor, if I could interrupt just for a moment. In terms of the Supreme Court's handling of the issue, the majority's handling of it, they found that duty was adequately fled as it relates to that employment verification form. What was actually sent to Urbana? Is there any portion of the majority's analysis that would allow for the finding of a duty against those that concealed but didn't transmit false information? I think clearly not. They said that there was, barring a special relationship which was not established nor could it be established, there is no duty as the court I think said to cry out and tell everybody everything you know. But in this case, even if there had been such a responsibility, the only information that my clients knew about was watching adult pornography, which is neither reportable under ANCRA nor something that they had an obligation to cry out about. And the fact that he was eventually ended up in a severance agreement with the Board of Education, which once again, we're not parties to that separation agreement. We're not mentioned in the separation agreement. We didn't sign the separation agreement. And something which counsel for the plaintiff tends to pass over, there's no confidentiality provision in there. There's no non-disclosure provision in the separation agreement, nor was the separation agreement anything that was conveyed to the Urbana School District or that they were even aware of it. So to answer your question, perhaps in more words than necessary, I think the answer is no. With respect to Carla Juergensen, Carla Juergensen was an employee of the Illinois Education Association as a field representative. She was never employed by the Board of Education. She had no supervisory responsibility with regard to Mr. White or any other employees there, nor did she have any legal right to do any of the things that I've just gone through with Julia Basti. The only allegation against the Illinois Education Association is based upon Respondiat Superior. They're not alleged to have done anything as a organization other than employ Carla Juergensen. And if there is no cause of action against Carla Juergensen, there can be no cause of action against the Illinois Education Association based upon Respondiat Superior. Furthermore, neither Basti or Juergensen is alleged to have produced or transmitted this notice of verification of any contact whatsoever with the Urbana School District or to have any contact whatsoever with the plaintiffs. As Mr. Kern said, the Supreme Court has defined what the viable causes of action are. And the viable cause of action is if you convey information to a third party, in this case the Urbana School District, you can't misrepresent that information. Well, we didn't make any representations whatsoever, false or otherwise, to the Urbana School District. So that eliminates that. And just to go back to what you were asking for, even if we had been aware of White's misconduct with students in the Unit 5 District, which we're not even alleged to have had that knowledge, that would not create a duty on our part to pass that information on to a third party in the form of some kind of warning. But we're not even alleged to have had any knowledge of misconduct with students. We're alleged to have knowledge that he was watching adult pornography on his school computer. And so for these reasons, we believe that the decision of the Circuit Court dismissing with prejudice the claims against my clients was appropriate and should be affirmed. Thank you. Thank you. I have just a few minutes and I want to be very succinct on what I have to say. The Supreme Court has heard this case and the Supreme Court made through various opinions some determinations about what this case was about legally. What the plaintiff here is doing is, and has done throughout this litigation, is bring forth and emphasize the public policy issues. And no one here would disagree with the public policy that pedophiles should be punished. They should be punished through the criminal justice system. But the problem is that the Supreme Court has made it clear that there was a waiver that took place. And what the plaintiff here wants to happen is that this Court ignore that rule. This Court devise a new rule that waiver doesn't apply to this particular case. And that the rules of law that the trial court judge, Judge Jones, applied to this case don't apply here. There's no precedent for that. She hasn't cited any. The plaintiffs haven't cited any precedent for that. There's no reason. The only thing the default argument has been is this is a public policy that's important. There are a lot of public policies that are important. No one here is arguing that Mr. White shouldn't be punished or that his wrong shouldn't be punished appropriately. But the fact of the matter is that what the Supreme Court found was that the sole cause of action that survived was the proposition that a letter of the days that this gentleman worked at Unit 5 were the only cause that survived the motions to dismiss. I represent Dale Heitbreeder. He's the only defendant I have. Mr. Heitbreeder had nothing to do with that particular letter, that document. Plaintiff's counsel admitted when she stood up here a moment ago that the waiver issue applies to my client because he was here before. There really is no reason for Dale Heitbreeder to be in this courtroom today or there is no reason for him to be in the courtroom in Champaign-Urbana for those reasons. When plaintiff's counsel is asking this court and the trial court to ignore the rules of law as they apply to this case as determined by the Supreme Court without basis, I don't believe that is an argument that's compelling for reversal of what the trial court did. One issue that wasn't raised that I think is at least worthy of comment is this. In their brief, the plaintiffs contend they weren't entitled to do some discovery in this case. The fact of the matter is that it is clear that there were absolutely no prohibitions to the plaintiff in engaging in any discovery at any time. In fact, if you look at the entirety of the record in this case, there was a protective order entered early on in the litigation that provided that documents shared among the parties would be protected. So the argument that, gee, I wasn't entitled to do some discovery, which makes up a big part of the plaintiff's brief, doesn't hold water. There's no basis for that contention because there was no request for more time to do discovery in this case prior to oral argument on the motion to dismiss, nor was there a prohibition. What period of time are we talking about in terms of when discovery would have been allowed? Well, discovery would have been allowed at a minimum for 13 months from the time period this case was returned from the Supreme Court back to the trial court. And so that time period existed. There was a time period prior to that time when the case was initially filed, and we had a first and second amendment complaint, that discovery did take place. I mean, documents were exchanged. Things happened in that regard. But there was no request for depositions of, for instance, the Unit 116 employees. One of the things the plaintiff certainly had the opportunity to do but didn't take advantage of was to depose those individuals to find out if they had some information that wasn't brought out otherwise. And so the contention that that right wasn't provided is not true. The contention is also unsupported because there was no request to engage in further discovery until the time period that the motion to dismiss was heard. And so for those reasons, there just is not sufficient argument, there's not sufficient law to support overturning what the circuit court did in Champaign County. Thank you. Thank you. Rebuttal? Briefly on rebuttal, there's been a couple of misrepresentations as to the knowledge, and I think I want to speak to that because it's important. Again, everybody keeps saying who knew about just adult pornography and who didn't. Plaintiff's position here, and let me be clear, people can think what they want about the position, but plaintiff's position is that the fourth amended complaint pleads knowledge of more than just knowledge of pornography against all of the defendants named in those capacities. Because I used the example of an ostrich with the head in their sand. In March 2004, three parents, parents of three children, there were actually five combined parents, but parents of three children came and alleged touching, uncomfortable sexual touching. And they alleged that touching, and White actually, when I recently deposed him in prison, said, yeah, I think they were saying it was sexual. I know they were, those three parents in March 2004. But that's not in this record. Then following that in October 2004, there was this additional issue of the pornography. It was additional, but it wasn't only. I don't think a school district can say I don't know about those three parental complaints that were made to the assistant principal and the principal both a mere several months ago. I don't know about those. I think you do know about those. Whether you put them in your letter when you're talking about pornography or not, you do know about them. I want to ask a question that follows up on something Mr. Brandt said in his concluding remarks, and that has to do with the discovery that was conducted and your request that the dismissal be without prejudice. Sounds like there was a substantial period of time after the case was sent back to the Supreme Court, and then with pretty clear direction, I think, in terms of the majority analysis as to where duty lies. Was there deposition taking done or a request for depositions to be taken during the period of time prior to this appeal? And if not, why not? Well, there was not. There recently has been since the motion to dismiss was ruled on. The trial court said go ahead with your claims against John Pye and the McLean School District. So since the motions to dismiss have been ruled upon, I have conducted discovery. There was not prior to that. And I don't know whether there was an opportunity or not. There probably possibly was, but there was no complaint at that time. The complaint came back and there were different plaintiffs. There were the other girls. There was no trial court discovery order. There was no trial court discovery beginning. But I don't know whether it was allowed or not. I just don't know. I guess what I would say as plaintiff's counsel, I was waiting for the motions to dismiss to be resolved to conduct discovery. And especially since that would tell the nature of the discovery. Who were the defendants? What were the causes of action? Things like that. It may well have been a mistake. But there was no discovery order saying you get to do this, this, and this at that time. And we were waiting, I assume we were all waiting for the motions to dismiss to be sorted out before conducting discovery. I don't think there was a prohibition. Nobody had said you can't. And then when the trial court said I'm ruling this way on the motions to dismiss, go ahead and proceed on your counts against John Pye in the McLean School District. Then since that time I have conducted discovery. A little bit of a double bind for plaintiff in this matter. You can't always conduct endless discovery. But the discovery we did conduct in that short recent time I think is valuable to this court. I would love to speak of it to this court and tell this court what it says. But again, that's not on the record and I can't. So there is a little bit of a problem I think in getting full discovery from plaintiff's side in this case. Up until this point. I would certainly never take discovery while it was on appeal to the Supreme Court. I mean that wouldn't have been logical in my mind to do discovery during all those years it was on appeal. I continue to allege, and then my time is running out, that the knowledge here is important and it is not I think this is an important case. I think it's an important public policy case. My opponent said that it's a public policy case and I agree. I just happen to feel that these are important public policies and that I have a right on behalf of my plaintiffs to present them to this court for these reasons. Thank you. Thank you.